UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ZIGLER, et al. | ) | Case No. 1:06CV2112 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE CHRISTOPHER BOYKO |
| vs. | ) | (Magistrate Judge McHargh) |
| | ) | |
| ALLSTATE INS. CO., et al., | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM |
| | ) | AND ORDER |

McHARGH, Mag.J.

The court has ruled on the plaintiffs' motion to compel, and the defendants' motion for a protective order. (Doc. 28; see generally doc. 15, 16, 18, and 20.) One discovery issue unresolved in the court's previous order involves an *in camera* examination of the documents listed in the defendant's privilege log, to determine whether any or all of the documents withheld from discovery are entitled to protection under the work product doctrine or the attorney-client privilege. See generally Peyko v. Frederick, 25 Ohio St.3d 164, 495 N.E.2d 918 (1986) (syllabus); Unklesbay v. Fenwick, 167 Ohio App.3d 408, 416, 855 N.E.2d 516, 522 (Ohio Ct. App. 2006).

2

ATTORNEY-CLIENT PRIVILEGE

Privileged matters are protected from discovery. Fed. R. Civ. P. 26(b)(1) and (5). The attorney-client privilege serves to shield confidential communications between a lawyer and client from disclosure either through discovery or at trial. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "While the purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys, the privilege is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit." United States v. Collis, 128 F.3d 313, 320 (6th Cir. 1997) (citing In re Grand Jury Proceedings Oct. 12, 1995, 78 F.3d 251, 254 (6th Cir. 1996)). See also In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 294 (6th Cir. 2002), cert. dismissed, 539 U.S. 977 (2003) (claims of attorney-client privilege are narrowly construed).

The burden of establishing the attorney-client privilege rests with the party asserting it. Columbia/HCA Healthcare, 293 F.3d at 294; United States v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999). The attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." Fisher v. United States, 425 U.S. 391, 403 (1976). In other words, the privilege "protects only those communications necessary to obtain legal advice." Columbia/HCA Healthcare, 293 F.3d at 294.

3

"A communication is not privileged simply because it is made by or to a person who happens to be an attorney." In re Rospatch Securities Litig., No. 1:90-CV-805, 1991 WL 574963, at *8 (W.D. Mich. March 14, 1991) (citing Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir. 1977) (en banc)). To be privileged, the communication must have the "*primary* purpose of soliciting legal, rather than business, advice." Rospatch, 1991 WL 574963, at *8 (quoting North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511, 514 (M.D. N.C. 1986) (emphasis in original)).

However, "documents prepared for the purpose of obtaining or rendering legal advice are protected even though the documents also reflect or include business issues." In re OM Securities Litig., 226 F.R.D. 579, 587 (N.D. Ohio 2005). "The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co., 951 F.Supp. 679, 685-686 (W.D. Mich. 1996) (quoting Coleman v. American Broadcasting Co., 106 F.R.D. 201, 206 (D. D.C. 1985)).

In a diversity action, state privilege law applies when the privilege concerns a state law claim. Fed. R. Evid. 501.

### Ohio law on privilege

The parties agree that the privilege issue here is governed by the Ohio Supreme Court's decision in Boone v. Vanliner Ins. Co., 91 Ohio St.3d 209, 744 N.E.2d 154 (2001), cert. denied, 534 U.S. 1014 (2001), which held that:

4

> In an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage.

Boone, 91 Ohio St.3d at 209, 744 N.E.2d at 154 (syllabus).

Boone arguably permits a plaintiff access to the entire claim file when an allegation of "bad faith" is lodged against an insurer, without regard to questions of attorney client privilege or work product doctrines, and without the necessity to provide a good faith basis for the claim.  The Ziglers, relying on a broad interpretation of Boone, seek all documents in defendant's possession up to the point of the verdict being returned in state court.

The issue before the court in Boone was "whether, in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain, through discovery, claims file documents containing attorney-client communications and work product that may cast light on whether the denial was made in bad faith." Boone, 91 Ohio St.3d at 211-212, 744 N.E.2d at 156.  The court found that "claims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection." Id. at 213, 744 N.E.2d at 158.  Accord Unklesbay, 167 Ohio App.3d at 415, 855 N.E.2d at 521 (lack of good faith in processing, evaluating, or refusing to pay claim).

However, the "bad faith" exception to privilege discussed in Boone "does not automatically permit discovery of everything contained in a claims file." Unklesbay, 167 Ohio App.3d at 416, 855 N.E.2d at 522.  For example, even a

5

broad reading of Boone cannot support discovery of materials created after the denial of coverage.  See Boone, 91 Ohio St.3d at 215, 744 N.E.2d at 159 (documents created after denial of coverage protected).  The critical issue is whether the discovery of "otherwise privileged materials . . . may cast light on bad faith on the part of the insurer."  Garg v. State Auto. Mut. Ins. Co., 155 Ohio App.3d 258, 265, 800 N.E.2d 757, 762 (Ohio Ct. App. 2003).  Accord Unklesbay, 167 Ohio App.3d at 416-417, 855 N.E.2d at 522-523.

The court has conducted an *in camera* examination of the documents in question.  The court has applied the standards discussed above to determine whether any or all of the documents on the privilege log are entitled to be shielded from discovery by the attorney-client privilege.

## ATTORNEY WORK PRODUCT

Unlike the attorney client privilege, the work product doctrine is governed, even in diversity cases, by a uniform federal standard embodied in Federal Rule 26(b)(3).  Frontier Refining, Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 702 n.10  (10th Cir. 1998) (quoting United Coal Co. v. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir. 1988)); Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 471 (S.D.N.Y. 1993); Fed. R. Civ. P. 26(b)(3).

The work product doctrine provides a haven from discovery which is broader yet less secure than the attorney-client privilege.  The attorney work product doctrine is "not a privilege but a qualified immunity protecting from

6

discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." In re Perrigo Co., 128 F.3d 430, 437 (6th Cir. 1997) (quoting Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz., 881 F.2d 1486, 1494 (9th Cir. 1989)). Discovery of such materials can be allowed with a showing of substantial need or undue hardship of obtaining equivalent materials. Id. However, Rule 26(b)(3) covers material "otherwise discoverable," so if a writing is already protected by the attorney-client privilege, it is not discoverable solely by reason of Rule 26(b)(3).

To determine whether information should be protected as work product, it must "(1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation and (3) was prepared by or for a party, or by or for his representative." In re Pfohl Bros. Landfill Litigation, 175 F.R.D. 13, 26 (W.D. N.Y. 1997) (quoting Brock v. Frank Panzarino, Inc., 109 F.R.D. 157, 159 (E.D. N.Y. 1986)). Because work product protection may hinder an investigation into the true facts, it should be narrowly construed. In re Grand Jury Proceedings, 604 F.2d 798, 802 (3rd Cir. 1979); Suggs v. Whitaker, 152 F.R.D. 501, 505 (M.D. N.C. 1993).

The level of protection offered by the work product doctrine differs according to the type of material at issue. The strongest protection is accorded to "opinion" work product. "Opinion work product is any material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories." In re Antitrust Grand Jury, 805 F.2d 155, 163 (6th Cir. 1986) (citing

7

Hickman v. Taylor, 329 U.S. 495, 510-511 (1947)). The doctrine is designed to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests." Columbia/HCA Healthcare, 293 F.3d at 294 (quoting Hickman, 329 U.S. at 510).  This is the core justification for the work product doctrine.

A greatly reduced level of protection is available for "fact" work product. Ordinary fact work product "is written or oral information transmitted to the attorney and recorded as conveyed by the client." Columbia/HCA Healthcare, 293 F.3d at 294; Antitrust Grand Jury,  805 F.2d at 163.  The work product doctrine does not protect from disclosure the underlying facts known by the party or her counsel, even if acquired in anticipation of litigation.  National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 n.5 (4th Cir. 1992); Vardon Golf Co., Inc. v. Karsten Mfg. Corp., 213 F.R.D. 528, 534 (N.D. Ill. 2003); United States ex rel. Burns v. A.D. Roe Co., Inc., 904 F.Supp. 592, 594 (W.D. Ky. 1995); Bowne, 150 F.R.D. at 471.

The court has applied the standards discussed above to determine whether any or all of the documents on the privilege log are entitled to be shielded from discovery by the work product doctrine.

## SUMMARY

Allstate asserts that it has already produced the entire claim file (over 1,000 pages of documents) regarding the Ziglers' claim, withholding only certain documents for which it claims a privilege. (Doc. 24, at 2.)

The court has reviewed all of the specific documents at issue, with particular vigilance for any documents which might demonstrate a "lack of good faith" thus rendering them "unworthy of protection," and finds that they are properly shielded from discovery by the attorney-client privilege and the work product doctrine. To a large extent, the documents either are communications between client and counsel, or documents directly related to trial preparation, generated after Allstate's valuation of the Ziglers' claim under the underinsured motorist provision of their policy. Boone does not support an entitlement to the discovery of these types of otherwise-protected materials. See ,e.g., Boone, 91 Ohio St.3d at 215, 744 N.E.2d at 159 (documents created after denial protected).

IT IS SO ORDERED.

April 9, 2007                    /s/ Kenneth S. McHargh
                                 Kenneth S. McHargh
                                 United States Magistrate Judge